**Wendell Dale LEWIS and Martin Hernandez, Plaintiffs–Appellants,**

v.

**Warden WOODS, et al., Defendants–Appellees.**

No. 88–2232
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

July 7, 1988.

Rehearing Denied Aug. 15, 1988.

Wendell Dale Lewis, pro se.

Martin Hernandez, pro se.

Before RUBIN, REAVLEY, and WILLIAMS, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

This case presents, in effect, two separate § 1983 lawsuits [1] that were never severed because they were handled in the summary manner permitted by our decision in *Spears v. McCotter*.[2] One claim is by a prisoner in state custody who complains that prison officials took a radio and amplifier from a fellow inmate to whom he had loaned them and never returned these items. His fellow inmate charges that the prison wrongly placed him in administrative segregation. We affirm the district court's dismissal of the property claim because it does not state a violation of any federal constitutional right but amend the

judgment to make clear that the dismissal is without prejudice to any right the prisoner may have under state law. We also affirm the district court's dismissal of the complaint about administrative segregation, but on a ground different from that stated in the district court opinion, and again without prejudice to the prisoner's right to file a complaint stating a cause of action if he can do so.

Wendell Lewis, who is confined in the Coffield Unit of the Texas Department of Corrections, asserts that prison officials took his radio and amplifier from the cell of his fellow inmate Martin Hernandez and have not yet returned this property. Lewis claims that he purchased the radio and amplifier from the prison commissary for $51.95 and $24.95 respectively.

Hernandez complains that prison officials placed him in administrative segregation based on another inmate's false accusation that he had been a gang member on the outside. Lewis and Hernandez both charge that the officials' real motivation for placing Hernandez in segregation was to separate the two inmates whose close friendship and alleged family ties have purportedly raised the animosity of other prisoners who dislike seeing any association between a black and an Hispanic.

The district court held a hearing at the Wynne Unit, Texas Department of Corrections, to obtain a clearer statement of the claims.[3] After the hearing, the district court dismissed with prejudice, under 28 U.S.C. § 1915(d), the claim as to the taking of the radio and amplifier, justifying the dismissal on the grounds that the "property loss is *de minimis* and further that Plaintiffs have alleged only negligence, at most." As to the plaintiffs' objection to Hernandez's confinement in administrative segregation, the court dismissed this complaint on the ground that the special master appointed in *Ruiz v. Estelle*[4] might

---

1. 42 U.S.C. § 1983 (1982).

2. 766 F.2d 179 (5th Cir.1985).

3. *Spears*, 766 F.2d 179. *See also Cay v. Estelle*, 789 F.2d 318, 322–26 (5th Cir.1986).

4. 503 F.Supp. 1265 (S.D. Tex.1980), *aff'd in part and rev'd in part*, 679 F.2d 1115 (5th Cir.1982), *amended in part and vacated in part*, 688 F.2d 266 (5th Cir.1982), *cert. denied*, 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983).

best handle it in connection with that ongoing class action.

The district court relied on several Supreme Court decisions to support its statement that "some violations of an individual's Constitutional rights are *de minimis*."[5] These cases do not stand for this proposition. A violation of constitutional rights is never *de minimis*, a phrase meaning so small or trifling that the law takes no account of it.[6] As the Supreme Court and this circuit have emphasized, a party who proves a violation of his constitutional rights is entitled to nominal damages even when there is no actual injury.[7] In *Carey v. Piphus*, the Supreme Court explained the reason for this rule: "By making deprivation of such [constitutional] rights actionable for nominal damages without proof of actual injury, the law recognizes the importance to organized society that those rights be scrupulously observed."[8] Far from taking no notice of constitutional violations, the law awards nominal damages when such violations occur without causing injury even though no damages will lie for other, lesser torts that do not cause injury.

Moreover, the Supreme Court has recognized that deprivations of a small amount of property, if intentionally inflicted and incapable of redress through post-deprivation state procedures, may contravene the due process clause. In *Goss v. Lopez*,[9] the Court held that a public school's temporary suspension of a child implicated due process because of the deprivation of educational benefits: "The Court's view has been that as long as a property deprivation is not *de minimis*, its gravity is irrelevant to the question wheth-

er account must be taken of the Due Process Clause." And later, in a portion of *Parratt v. Taylor* that has not been overruled, the Court held that a hobby kit valued at $23.50 was "property" within the meaning of the Fourteenth Amendment.[10] We cannot agree with the district court, therefore, that Lewis's alleged property loss was *de minimis*. The Supreme Court has recognized even smaller losses as not only worthy of legal redress but as possibly implicating constitutional rights.

The cases upon which the district court relied actually stand for a different proposition: many acts that might constitute violations of state tort law do not amount to constitutional violations. Thus, in *Baker v. McCollan*,[11] the Court held that a person arrested and detained on charges of which he was innocent might have a state tort claim of false imprisonment, but he had no constitutional claim so long as the arrest was pursuant to a warrant valid under the Fourth Amendment and the detention comported with due process. Similarly, in *Estelle v. Gamble*[12] the Court held that an inmate who asserted that a prison physician was negligent in diagnosing or treating him might have a claim for medical malpractice, but he had no claim under the Eighth Amendment unless prison officials exhibited "deliberate indifference to serious medical needs." The Supreme Court in *Paul v. Davis* succinctly stated the proposition underlying these cases: "[T]he Fourteenth Amendment [is not] a font of tort law to be superimposed upon whatever systems may already be administered by the States. We have noted the

---

5. *Baker v. McCollan*, 443 U.S. 137, 144–45, 99 S.Ct. 2689, 2694–95, 61 L.Ed.2d 433 (1979); *Estelle v. Gamble*, 429 U.S. 97, 105–06, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Paul v. Davis*, 424 U.S. 693, 699–701, 96 S.Ct. 1155, 1159–60, 47 L.Ed.2d 405 (1976); *Goss v. Lopez*, 419 U.S. 565, 576, 95 S.Ct. 729, 737, 42 L.Ed.2d 725 (1975).

6. Black's Law Dictionary 482 (4th ed. 1957).

7. *Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 106 S.Ct. 2537, 2544 n. 11, 91 L.Ed.2d 249 (1986); *Carey v. Piphus*, 435 U.S. 247, 266, 98 S.Ct. 1042, 1053–54, 55 L.Ed.2d 252 (1978); *Mann v. Smith*, 796 F.2d 79, 86 (5th

Cir.1986); *Ryland v. Shapiro*, 708 F.2d 967, 976 (5th Cir.1983).

8. *Carey*, 435 U.S. at 266, 98 S.Ct. at 1054.

9. 419 U.S. at 576, 95 S.Ct. at 737.

10. *Parratt*, 451 U.S. 527, 537, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), *rev'd in part*, *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

11. 443 U.S. at 144–45, 99 S.Ct. at 2694–95.

12. 429 U.S. at 105–06, 97 S.Ct. at 292.

'constitutional shoals' that confront any attempt to derive from congressional civil rights statutes a body of general federal tort law."[13] This circuit may help to clarify the distinction between state law torts and constitutional violations when the court rehears *Johnson v. Moral*[14] en banc, although in the case at bar the distinction is clear.

■ It is axiomatic that a plaintiff who files suit under 42 U.S.C. § 1983 may recover only if he proves a constitutional violation,[15] and we agree with the district court that Lewis and Hernandez have not alleged facts in their pleadings, as amplified and clarified at the *Spears* hearing, sufficient to establish a deprivation of property without due process. Although the plaintiffs asserted that the taking was intentional, the district court held that the facts alleged suggested "negligence, at most." In a suit against state officials under § 1983, mere assertions of the intentionality of a challenged act are not enough; the plaintiff must allege specific facts to support such assertions,[16] and the plaintiffs here have not done so. Moreover, even if the taking were intentional, the state could afford the plaintiffs due process by providing a post-deprivation remedy for the redress of the unforeseeable, unauthorized injury here alleged.[17]

■ The pleadings may nonetheless suffice to support a charge of negligent failure on the part of the prison officials to return Lewis's property to him. In the companion cases of *Daniels v. Williams*[18] and *Davidson v. Cannon*,[19] however, the Supreme Court held that "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty or property."[20] Without an intentional act, there is no "deprivation" in the constitutional sense.[21] We therefore affirm the district court's dismissal of the property claim on the ground that the plaintiffs have alleged no constitutional violation, but we amend the judgment to clarify that the dismissal is without prejudice to any rights the plaintiffs may have at state law. As we emphasized above, a claim may fall short of constitutional significance and yet remain cognizable under state law.

Lewis and Hernandez next complain that prison officials wrongly placed Hernandez in administrative segregation in reliance on the false accusations of a fellow inmate and without adequately investigating these accusations. As to this claim, the district court stated:

> If the charges made in the pleadings are taken as true, the actions of the Texas Department of Corrections officials and their agents may be contrary to the *Ruiz* injunctive decree in that they might entail violations of its provisions, as well as the stipulations of the parties regarding their enforcement and may, thus, have contempt implications.

Without further discussion of the merits of the claim, the court dismissed it with prejudice under § 1915(d) and ordered that a copy of its opinion be forwarded, "[i]n the interest of justice, for reporting purposes *only*," to the attorneys representing the *Ruiz* plaintiff class and to the office of the special master.

Because the district court offered no explanation for the dismissal other than the

---

**13.** *Paul,* 424 U.S. at 701, 96 S.Ct. at 1160 (quoting *Griffin v. Breckenridge,* 403 U.S. 88, 101–02, 91 S.Ct. 1790, 1797–98, 29 L.Ed.2d 338 (1971)).

**14.** 843 F.2d 846 (5th Cir.1988), *reh'g en banc granted* (5th Cir. May 23, 1988).

**15.** *Baker,* 443 U.S. at 142, 99 S.Ct. at 2693.

**16.** *Brinkmann v. Johnston,* 793 F.2d 111, 113 (5th Cir.1986); *Elliott v. Perez,* 751 F.2d 1472, 1479 (5th Cir.1985).

**17.** *Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 3203–04, 82 L.Ed.2d 393 (1984); *Sim-*

*mons v. Poppell,* 837 F.2d 1243, 1244 (5th Cir. 1988).

**18.** 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

**19.** 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986).

**20.** *Daniels,* 474 U.S. at 328, 106 S.Ct. at 663 (emphasis in original).

**21.** *Id.* at 329–32, 106 S.Ct. at 664–65.

asserted superior ability of the *Ruiz* special master to handle the claim, we treat this as the ground for the dismissal. In *Johnson v. McKaskle*,[22] however, this court held that the *Ruiz* special master lacked authority to hear "matters that should appropriately be the subject of separate judicial proceedings, such as actions under § 1983" and that such matters should be referred to the court overseeing the enforcement of the *Ruiz* injunctive decree.[23] Subsequently, in *Green v. McKaskle*,[24] a panel of the court called into question the wisdom of allowing *Ruiz* class members to maintain separate lawsuits and of referring all of these hundreds of cases to a single district court in Texas. The circuit voted to rehear *Green* en banc,[25] presumably to confront and resolve the *Green* panel's criticism of the *Johnson* decision, but certain circumstances made en banc review impracticable —Green's parole had mooted the question whether he might maintain a separate lawsuit, and the Judicial Council of the Fifth Circuit had vacated the part of the *Johnson* opinion requiring that all cases implicating the *Ruiz* decree be transferred to the *Ruiz* court.[26]

Following *Green*, a panel of this court held that a mentally retarded patient could maintain a lawsuit separate from a class action pending against the Texas mental health system and that "this [individual] action should remain with the court in which the action was filed" rather than being transferred to the court administering the class action.[27] Similarly, in *Gillespie v. Crawford*,[28] a case currently slated for rehearing en banc, the panel held that a prisoner who alleged claims similar to those in *Ruiz* could nonetheless maintain an independent action in the court where he filed.

Although the mandate in *Gillespie* is recalled, and the en banc court may decide the case differently from the panel, we understand the current law of the circuit under *Johnson, Green,* and *Savidge* to allow prisoners challenging certain conditions of confinement related to the *Ruiz* decree to maintain independent lawsuits in the courts where they properly filed. The district court in this case therefore erred in dismissing the plaintiffs' challenge to Hernandez's confinement in administrative segregation on the ground that "[t]he confinement process is one monitored and approved by the Special Master in *Ruiz*, and this situation will be brought to his attention."

We affirm the dismissal, nonetheless, on an alternative ground. The plaintiffs have not alleged facts, either in their pleadings or at the *Spears* hearing, specific enough to state a claim.[29] They allege that Hernandez's mental and physical health declined as a result of his confinement in administrative segregation, but they specify no illness or medical condition and make no charge that prison officials have been deliberately indifferent to Hernandez's serious medical needs, if any.[30] They do not say whether the prison gave Hernandez a hearing before placing him in segregation or how any procedures preceding that administrative decision might have been inadequate or unfair. Nor do they state facts tending to show that the officials acted with such malicious, arbitrary, or vindictive disregard for Hernandez's rights as to contravene substantive due process. We therefore fail to see any "arguable basis [for the claim] in law and fact."[31] Once again, however, we amend the judgment to dismiss without prejudice,

**22.** 727 F.2d 498 (5th Cir.1984).

**23.** *Id.* at 500–01.

**24.** 770 F.2d 445 (5th Cir.1985).

**25.** 772 F.2d 137 (5th Cir.1985).

**26.** *Green,* 788 F.2d 1116, 1121 n. 3 (5th Cir. 1986); *Savidge v. Fincannon,* 784 F.2d 186 (5th Cir.1986).

**27.** *Savidge,* 784 F.2d at 186–87.

**28.** 833 F.2d 47 (5th Cir.1987), *reh'g en banc granted, id.* at 50.

**29.** *Elliott,* 751 F.2d at 1479.

**30.** *See Estelle v. Gamble,* 429 U.S. at 105–06, 97 S.Ct. at 292.

**31.** *Cay,* 789 F.2d at 326.

allowing Hernandez to file a new lawsuit if he knows facts sufficient to support a constitutional claim.[32] We caution him, however, that Federal Rule of Civil Procedure 11 applies to *pro se* litigants as well as to counsel.

 In their *pro se* brief to this court, Lewis and Hernandez assert that Hernandez's confinement in administrative segregation deprived each plaintiff of the other's legal assistance and so denied them both fair access to the courts. Because this claim was never raised in the district court, we do not address it here.[33]

For the foregoing reasons, we AFFIRM the district court's dismissal of both claims but AMEND the judgment to dismiss without prejudice.

---

**32.** *Good v. Allain,* 823 F.2d 64, 67 (5th Cir.1987).

**33.** *Marshall v. Norwood,* 741 F.2d 761, 763 (5th Cir.1984).